UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOAN E. HOWLAND,

        Plaintiff,

v.                                     Case No. 8:21-cv-1065-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

### A.   Procedural Background

Plaintiff filed an application for DIB on December 28, 2018 (Tr. 254-57). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 119-54, 157-76). Plaintiff then requested an administrative hearing (Tr. 177-78). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 82-118). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 58-81). Subsequently, Plaintiff requested

review from the Appeals Council, which the Appeals Council denied (Tr. 1-7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, claimed disability beginning February 24, 2017 (Tr. 254). Plaintiff completed two years of college (Tr. 281). Plaintiff's past relevant work experience included work as a licensed practical nurse (Tr. 113, 281). Plaintiff alleged disability due to rheumatoid arthritis, multilevel degenerative disc disease, leftward convex thoracolumbar scoliosis, asthma, COPD, osteopenia, and anxiety (Tr. 280).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity since February 24, 2017, the alleged onset date (Tr. 63). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, scoliosis, inflammatory arthritis, osteoarthritis, synovitis and tenosynovitis of the hands, asthma, obesity, and fibromyalgia (Tr. 63). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 65). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except she could occasionally push and pull with

the bilateral upper extremities; occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; never crawl or climb ladders, ropes, or scaffolds; occasionally reach overhead bilaterally; frequently reach in all other directions; frequently handle and finger bilaterally; and have no more than occasional exposure to atmospheric irritants, such as dust, odors, fumes, and gases, and workplace hazards, such as unprotected heights and moving machinery (Tr. 67). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 68).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 72). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an office helper; a mail clerk, non-postal; a copy machine operator; and a housekeeping cleaner (Tr. 74, 113-17). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 74-75).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following:   (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of

his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether

the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by (1) improperly finding that Plaintiff's mental impairments and limitations were not severe; (2) improperly finding that Plaintiff could use her hands for frequent handling and fingering; (3) failing to properly consider Plaintiff's subjective complaints of pain; and (4) failing to properly consider the opinion of her treating psychiatrist, Dr. Vidyasagar Vangala. For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.    Mental Impairments

Plaintiff contends that the ALJ improperly concluded that Plaintiff's mental impairments and limitations were not severe. At step two of the sequential analysis, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*).[1] At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522(a). "An

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. § 404.1521.

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the

requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, scoliosis, inflammatory arthritis, osteoarthritis, synovitis and tenosynovitis of the hands, asthma, obesity, and fibromyalgia (Tr. 63). Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray*, 550 F. App'x at 853-54; *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

Beyond that, however, the ALJ found that Plaintiff's medically determinable mental impairments of affective disorder and anxiety disorder, considered singly and in combination, did not cause more than minimal limitation in her ability to perform basic mental work activities and therefore, not severe (Tr. 64). The ALJ's determination is supported by substantial evidence.

The ALJ found that in the functional area of understanding, remembering or applying information, Plaintiff had no more than a mild limitation (Tr. 64). The ALJ's finding is supported by substantial evidence. Nothing in the record indicates that Plaintiff had significant cognitive deficits. For instance, Plaintiff reported that she managed finances, managed her medications along with that of her husband's care, including his medication and doctor appointments (Tr. 289-90, 293). The ALJ found that in the functional area of interacting with others, Plaintiff had no more

than a mild limitation (Tr. 64). The ALJ's finding is supported by substantial evidence. For example, Plaintiff reported that she partook in weekly social chatting visits and went on "social friend visits [and] walks" one to three times a week (Tr. 293). Additionally, Plaintiff reported no problems getting along with family, friends, or others (Tr. 294). The ALJ found that in the functional area of concentrating, persisting, or maintaining pace, Plaintiff had no more than a mild limitation (Tr. 65). The ALJ's finding is supported by substantial evidence. For example, although Plaintiff reported depressed mood (Tr. 536, 567, 694, 700, 736, 740, 800, 805, 810, 838), her mental status exams were largely unremarkable, showing intact attention and concentration (Tr. 314, 321, 438, 446-47, 451-52, 457, 472-73, 567, 570-71, 655, 663, 740, 800, 806, 811, 838). Lastly, the ALJ found that in the functional area of adapting or managing oneself, Plaintiff had no more than a mild limitation (Tr. 65). The ALJ's finding is supported by substantial evidence. For example, although Plaintiff reported depressed mood (Tr. 536, 567, 694, 700, 736, 740, 800, 805, 810, 838), her mental status exams were largely unremarkable, showing good insight and judgment (Tr. 427, 447, 452, 457, 473, 567, 571, 655, 663, 740, 800, 806, 811, 838).

Plaintiff also argues that her depression screening PHQ-9 test conducted by her psychiatrist, Dr. Vidyasagar Vangala, indicated that she had "moderate" depression.[2] However, a diagnosis does not establish that her mental impairments

---

[2] The PHQ-2 and PHQ-9 (Patient Health Questionnaire) are a "self-administered tools for assessing depression." *Patient Health Questionnaire (PHQ-9 & PHQ-2), Construct: Depressive Symptoms*, American Psychological Association (June 2020), www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health.

were severe or that they caused work-related limitations. *See McCruter*, 791 F.2d at 1547. Moreover, Dr. Vangala, who administered the PHQ-9, classified Plaintiff's depression as mild (Tr. 766, 802, 807, 812, 839). It is also worth noting that Plaintiff's reported PHQ-2 depression screening test conducted by her previous primary care provider, Dr. Frank Fera, generally noted a score of 0 and at most 2 (Tr. 437, 442, 445, 451, 457, 467, 472, 654).[3] Additionally, the ALJ did not deny that Plaintiff had a diagnosis of depression (Tr. 64). Rather, the ALJ found that the record did not support more than a mild limitation caused by such impairment (Tr. 64-65).

Based on the foregoing, substantial evidence supports the ALJ's findings classifying Plaintiff's mental impairment as not severe.

### B.    RFC - Frequent Handling and Fingering

Plaintiff next argues that the ALJ improperly concluded that Plaintiff could frequently handle and finger. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused

---

[3] "A PHQ-2 score ranges from 0-6. The authors identified a score of 3 as the optimal cutpoint when using the PHQ-2 to screen for depression. If the score is 3 or greater, major depressive disorder is likely." https://www.hiv.uw.edu/page/mental-health-screening/phq-2#:~:text=A%20PHQ%2D2%20score%20ranges,major%20depressive%20disorder%20is%20likely.

by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (*per curiam*) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *Jamison*, 814 F.2d at 588 (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (T. 68). Specifically, the ALJ found that although Plaintiff testified that she stopped working in February 2017 due to pain in her hands (*see* T. 97), it was not until November 2018 that she began reporting pain and swelling in her hands (Tr. 69). The ALJ noted that while physical examinations in November 2018 revealed tenderness at the base of the thumbs bilaterally, tenderness and swelling in the finger joints bilaterally, and reduced range of motion in the hands bilaterally, x-rays of the hands revealed mild degenerative joint disease in the left hand and unremarkable findings in the right hand (Tr. 69). As a result, the ALJ noted that Plaintiff was diagnosed with rheumatoid arthritis and osteoarthritis, and she was prescribed medication and administered steroid injections in the hands (Tr. 69-70). Nonetheless, the ALJ found that in subsequent physical examinations, Plaintiff demonstrated normal grip strength (Tr. 70). Moreover, the ALJ noted that Plaintiff could perform daily activities and hobbies that and demonstrated improvement in symptoms through the course of her treatment (Tr. 70). The ALJ concluded that "[d]ue to the rheumatoid arthritis and osteoarthritis in the hands, she can never crawl or climb ladders, ropes, or scaffolds and is limited to frequent handling and fingering bilaterally" (Tr. 70).

The objective medical evidence supports the ALJ's findings regarding Plaintiff's gross and fine manipulation limitations. According to the record, Plaintiff first reported pain in her hands in November 2018 (Tr. 464). Plaintiff visited her primary care provider, which at the time was Dr. Frank Fera, and was seen by the nurse practitioner who observed tenderness and reduced range of motion in her hands (Tr. 467). The nurse practitioner noted that she gave Plaintiff samples of Duexis[4] and a nonsteroidal anti-inflammatory topical gel (Tr. 467). Plaintiff was also referred to a rheumatologist physician assistant, RPA Kaymakcian, who saw Plaintiff that same month and noted twelve tender swollen joints (Tr. 569, 571). Plaintiff reported that the topical gel and Duexis had helped her but she continued to be symptomatic, therefore had been subsequently prescribed prednisone (Tr. 569). RPA Kaymakcian continued Plaintiff's prescription for prednisone and the topical gel, and prescribed a stronger dose of Tylenol (Tr. 572). RPA Kaymakcian also ordered X-rays of Plaintiff's hands, which revealed mild degenerative joint disease at the first carpometacarpal joint in her left hand and unremarkable findings in her right hand (Tr. 582). The X-ray report also states that there is no abnormal soft tissue swelling detected in either hand (Tr. 582). In a subsequent visit with RPA Kaymakcian on December 17, 2018, Plaintiff was injected with cortisone, which she tolerated well, and prescribed Methotrexate for her rheumatoid arthritis (Tr. 568). At the next visit with RPA Kaymakcian on January 29, 2019, Plaintiff

---

[4] "DUEXIS contains two medicines: ibuprofen, a nonsteroidal anti-inflammatory drug (NSAID), and famotidine, a histamine $H_2$ – receptor blocker medicine." https://www.duexis.com/

reported improvement from the cortisone injections into her left thumb (Tr. 660). Although Plaintiff reported minimal benefit from the Methotrexate, RPA Kaymakcian noted that Plaintiff was only six doses into the medication (Tr. 660). RPA Kaymakcian noted that Plaintiff showed two tender and swollen joints, an improvement from the previous visit more than a month before (Tr. 660). RPA Kaymakcian increased the Methotrexate dosage (Tr. 664). In February 2019, Plaintiff saw a consultative examiner, Dr. Kautilya Puri, who noted that Plaintiff's hand and finger dexterity was intact and her grip strength was 5/5 bilaterally (Tr. 700-703).

Plaintiff was not treated by a rheumatologist again until October 2019 when Plaintiff began to see rheumatologist Dr. Anika Alarakhia who noted that although Plaintiff had "some evidence of synovitis of the hands on exam," Dr. Alarakhia did not have any recent lab work to review (Tr. 427). Nonetheless, Dr. Alarakhia's physical examination of Plaintiff revealed tenderness in all hand joints with slight swelling over the knuckles and difficulty making a fist bilaterally (Tr. 427). Plaintiff reported that she felt that Methotrexate was not helpful (Tr. 426). Dr. Alarakhia diagnosed Plaintiff with rheumatoid arthritis of multiple sites with negative rheumatoid factor, osteoarthritis involving multiple joints, and fibromyalgia (Tr. 425). Dr. Alarakhia also recommended Plaintiff remain with the same dosage of Methotrexate and restart prednisone and take Duexis[5] as needed (Tr. 427). Dr.

---

[5] It is unclear from the record when Plaintiff stopped taking Duexis before Dr. Alarakhia recommended her to restart the medication.

Alarakhia also submitted to SSA an undated prescription note stating that Plaintiff is "unable to use hands currently because of pain" (Tr. 727). In a March 2020 visit, Dr. Alarakhia reported that Plaintiff was doing well on subcutaneous methotrexate and her inflammatory markers were now normal and her pain had improved (Tr. 833).

Plaintiff was also seen by a psychiatrist, Dr. Vidyasagar Vangala (Tr. 738). Dr. Vangala's treatment notes state that Plaintiff reported that "doing arts and crafts makes the anxiety better" (Tr. 738). As part of the psychiatric evaluation by the consultative mental examiner conducted in February 2019, Dr. Jennifer Ochoa noted that Plaintiff enjoyed reading and sewing but could no longer sew because of her physical limitations (Tr. 696). Moreover, the consultative examiner, Dr. Puri also noted that Plaintiff "can do some cooking, cleaning, shopping, showers, bathes, and dresses" (Tr. 701). In her response to the Supplemental Immune System Questionnaire completed in May 2019, Plaintiff stated that her symptoms included pain, swelling of both hands and thumb joints and would get some relief from extra-strength Tylenol (Tr. 273). Moreover, Plaintiff, asserted in her function report that she takes care of her husband, who she testified is disabled (Tr. 91), manages his medication and doctor appointments, and cooks daily (Tr. 290). In her function report, Plaintiff also stated that she drove a car (Tr. 292), although at the hearing, she testified that she rarely drove because of not being able to maintain grip strength around the steering wheel (Tr. 91-92). However, physical examinations throughout the record show normal strength and tone in all extremities (Tr. 438, 446-47, 452,

458, 655, 736, 785, 832). Moreover, while some physical examinations noted Plaintiff's joint tenderness, swelling, and limited grip strength in the hands (Tr. 467, 571, 702, 736, 775), other physical examination revealed no visible swelling (Tr. 438, 447-48, 452, 457-58, 473, 542, 555, 560, 634, 655).

Plaintiff also argues that the ALJ improperly considered her activities and that she performed arts and crafts in the assessment of her RFC and the manual limitations. According to Plaintiff, her statement to Dr. Vangala that engaging in arts and crafts makes her anxiety better is not an indication that Plaintiff was currently able to do arts and crafts, or if so, how extensive her activities were in that area. However, the ALJ did not rely solely on Plaintiff's daily activities or hobbies in assessing Plaintiff's ability to perform certain type of work. Rather, the ALJ considered Plaintiff's daily activities as part of her overall assessment of the RFC (*see* 67-72).

Moreover, Plaintiff argues that the ALJ placed too much emphasis on the previous administrative medical findings of the state agency reviewing physicians. On reconsideration, state agency reviewing physician, Dr. Larry Meade, found that Plaintiff was limited to frequent handling and fingering (Tr. 148). The ALJ's conclusion that Dr. Meade's findings were persuasive because they were consistent with the evidence of record is supported by substantial evidence. The ALJ considered Dr. Meade's opinion in combination with her full review and consideration of the record, which supports her findings as to Plaintiff's functional limitations. The ALJ even noted that Plaintiff's primary care provider, Dr. Aftab

Khan's physician assistant submitted a medical opinion that indicated that Plaintiff had no limitations to her fine or gross motor activity and was able to use her hands for grasping, pushing/pulling, and fine manipulation (Tr. 728-29). However, the ALJ found that the record and Dr. Khan's own treatment notes supported some manipulative limitations (Tr. 72).

Plaintiff's treatment records showed no weakness or swelling during multiple examinations, with normal range of motion, indicating that her allegations were not fully supported by the evidence. Plaintiff's symptoms generally improved as a result of medication. The ALJ properly discounted Dr. Alarakhia's opinion in the form of the undated prescription notes because it was vague and does not set forth specific functional limitations (Tr. 72). Moreover, Plaintiff's treatment plan was consistent and Plaintiff reported improvement of her symptoms. While, for example, some of Plaintiff's physical examinations suggested that Plaintiff had limited grip and strength in her hands, the ALJ's decision must be affirmed because it is supported by substantial evidence in the record. *See Ingram*, 496 F.3d at 1260.

**C.    Subjective Complaints of Pain**

Plaintiff additionally asserts that the ALJ failed to properly consider her subjective complaints of pain. As indicated, in addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the

objective evidence and other evidence.[6] *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 404.1529. Consideration of a claimant's symptoms thus involves a two-step process, wherein the ALJ first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the ALJ determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR

---

[6] The regulations define "objective evidence" to include evidence obtained from the application of medically acceptable clinical diagnostic techniques and laboratory findings. 20 C.F.R. § 404.1529(c)(2). Additionally, the regulations define "other evidence" to include evidence from medical sources, non-medical sources, and statements regarding a claimant's pain or other symptoms, including about treatment the claimant has received. *See* 20 C.F.R. § 404.1529(c)(3). Moreover, the regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. § 404.1502(i).

16-3p, 2017 WL 5180304, at *3-9. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

Notably, in considering a claimant's subjective complaints, the ALJ considers both inconsistencies in the evidence and the extent to which any conflicts exist between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by treating or non-treating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4). Importantly, however, the ALJ's "determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable" a court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks and citation omitted); *see Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 740 (11th Cir. 2017) (quoting *Dyer*).

In this instance, the ALJ found that Plaintiff's allegations of symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 67-72). Plaintiff testified that she was unable to work due to pain in her hands and inability to complete tasks (Tr. 95-96). She also stated that she was losing

strength and range of motion in her hands before leaving her last job (Tr. 96). Plaintiff reported that since learning that she has rheumatoid arthritis, she had little to no strength in her hands, little range of motion, and limited ability to grasp (Tr. 96). Specifically, Plaintiff testified that she has difficulty cooking and driving, and cannot dial a number on a phone (Tr. 92, 100-01). Plaintiff also reported constant shooting pain from her elbows through her fingertips and pain in her other joints when she experiences a flare-up (Tr. 101). Moreover, Plaintiff testified that she was only able to take Tylenol for pain due to her rheumatoid arthritis medication and had problem walking due to her back (Tr. 101-03).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 68). The ALJ noted the following:

> Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. As a part of this evaluation, the undersigned evaluated the consistency of the claimant's subjective allegations with the evidence of record. In making this assessment, the undersigned considered the record as a whole, including the claimant's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms. Factors relevant to this assessment include:
> - Daily activities;
> - The location, duration, frequency, and intensity of the pain or other symptoms;
> - Precipitating and aggravating factors;
> - The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

- Treatment, other than medication, received for relief of pain or other symptoms;
- Any measures, other than treatment, used to relieve the pain or other symptoms; and
- Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

(Tr. 68-69).

The ALJ then recounted the medical evidence of record in order to demonstrate that it did not support Plaintiff's testimony (Tr. 68-72). Thus, the record reveals that the ALJ provided an adequate basis to explain why she discredited portions of Plaintiff's subjective complaints where they were contradicted by the record. The ALJ noted that Plaintiff reported that she could perform multiple daily activities, such as cooking, cleaning, shopping, and caring for her personal needs, although she testified that she had little strength and losing range of motion in her hands. Plaintiff states that the daily activities cited by the ALJ in support of her finding are at Exhibit 10F (Tr. 701), which is the consultative examiner Dr. Puri's evaluation. Plaintiff argues that Dr. Puri actually stated that Plaintiff could do "some" cooking, cleaning, shopping, and caring for personal needs, thus, Plaintiff was limited in some unspecified way in those activities. However, Plaintiff is pointing to a distinction without a difference. In fact, Plaintiff did not only report to Dr. Puri that she was able to do some of those daily activities, but she also reported in her function report that she managed her medications along with that of her husband's care, including his medication and doctor appointments and cooked some meals daily (Tr. 289-91, 293). Plaintiff specified that she prepared

stove top foods and microwave meals and used smaller lighter pots and pans (Tr. 291). Plaintiff also reported driving a car to travel, which she mostly did during the day (Tr. 291). In her supplemental responses in May 2019, when asked what difficulties she had caring for her own personal needs, she explained that she needed help opening and squeezing bottles (Tr. 275).

As previously discussed, the ALJ did not rely solely on Plaintiff's participation in some daily activities when discounting her symptoms. Rather, the ALJ provided a detailed analysis of the evidence of record, articulated the reasons why she discounted Plaintiff's subjective complaints, and supplied a rationale for her findings. Contrary to Plaintiff's argument, the ALJ did not totally discount Plaintiff's subjective complaints, but considered them along with the record as a whole, including objective and other evidence, in formulating a limited RFC. Therefore, the ALJ did not err when considering Plaintiff's subjective complaints.

### D. Dr. Vangala's Opinion

Lastly, Plaintiff contends that the ALJ failed to properly consider Dr. Vangala's opinion. Previously, in the Eleventh Circuit, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel.*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause existed where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's

own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). However, claims filed on or after March 27, 2017 are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. § 404.1520c; *see also Schink*, 935 F.3d at 1259 n.4. Of note, the new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017. 20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 895-98 (11th Cir. 2022); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (*per curiam*).[7] Indeed, the Eleventh Circuit recently concluded that, since the new regulations fall within the scope of the Commissioner's authority and are not arbitrary and capricious, the new regulations abrogate the Eleventh Circuit's previous precedents applying the so-called treating-physician rule. *Harner*, 38 F.4th at 896. Accordingly, since Plaintiff submitted her application for benefits on December 18, 2018 (Tr. 254-55), the ALJ properly applied the new regulation. Therefore, the ALJ was not bound by Dr. Vangala's opinion based on the Eleventh Circuit's previous precedents applying the so-called treating-physician rule.

Under the revised regulation, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. §

---

[7] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). Beyond supportability and consistency, an ALJ may also consider the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v) & (5).

Here, Plaintiff's psychiatrist, Dr. Vangala, submitted a medical opinion wherein she opined that Plaintiff had marked limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Tr. 842-45). The ALJ did not find Dr. Vangala's opinion persuasive because she found it inconsistent with the record as a whole, including Dr.

Vangala's own treatment notes (Tr. 72). Specifically, the ALJ found that mental status and psychiatric examination throughout the record documented largely unremarkable findings (*see* Tr. 314, 321, 427, 438, 446-47, 451-52, 457, 472-73, 567, 570-71, 655, 663, 740, 800, 806, 811, 838). Additionally, Dr. Vangala classified Plaintiff's depression as mild (Tr. 766, 802, 807, 812, 839).

Plaintiff argues that the distinction between "mild" and "moderate" criteria for major depressive disorder is that a mild diagnosis requires one of the following symptoms: loss of confidence or self-esteem; unreasonable feelings of self-reproach or excessive and inappropriate guilt; recurrent thought of death or any suicidal behavior; complaints or evidence of diminished ability to think or concentrate, such as indecisiveness or vacillation; change in psychomotor activity with agitation or retardation; sleep disturbance of any type; and change in appetite with corresponding weight change; whereas a moderate diagnosis requires four of the symptoms above along with great difficulty in continuing with ordinary activities. Although Plaintiff attempts to characterize this as a subtle difference, a claimant exhibiting great difficulty in continuing with ordinary activities would presumably have significant limiting symptoms than one who does not. For instance, Plaintiff reported that she managed finances, managed her medications along with that of her husband's care, including his medication and doctor appointments (Tr. 289-90, 293). The ALJ found that in the functional area of interacting with others, Plaintiff had no more than a mild limitation (Tr. 64).

Moreover, a review of the record reveals inconsistencies with Dr. Vangala's opinion. For example, Plaintiff reported that she partook in weekly social chatting visits and went on "social friend visits [and] walks" one to three times a week (Tr. 293). Additionally, Plaintiff reported no problems getting along with family, friends, or others (Tr. 294). Furthermore, Plaintiff's mental status exams, including Dr. Vangala's own treatment notes, generally showed that Plaintiff had intact attention and concentration and good insight and judgment (Tr. 314, 321, 427, 438, 446-47, 451-52, 457, 472-73, 567, 570-71, 655, 663, 740, 800, 806, 811, 838).

Therefore, the ALJ did not err in finding Dr. Vangala's opinion not persuasive based on her consideration of the record. Substantial evidence supports the ALJ's findings regarding Plaintiff's level of limitations as set out in the RFC.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1.    The decision of the Commissioner is affirmed.

2.    The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of September, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record